RACHEL GEORGE, PETITIONER *v*. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket Nos. 15083–10, 6116–11.      Filed December 19, 2012.

In January 2007, in compliance with a State court order, P
executed a Form 8332 ("Release of Claim to Exemption for
Child of Divorced or Separated Parents"), which stated that "I
agree not to claim an exemption for" her daughter S.S. as a
dependent for the years at issue. However, P believed the
State court order to be improper, so on her income tax return
for each of 2007 and 2008, P claimed a dependency exemption
deduction and a child tax credit for S.S. P's former spouse also
claimed S.S. as a dependent for those years and attached the
executed Form 8332 to his tax returns. *Held*: The Form 8332
that P executed was not rendered invalid by any error in the
State court order requiring it nor by the fact that P signed the
form under the compulsion of that State court order. Rather,
P's release of her claim to the exemption was valid. Con-
sequently, under the terms of I.R.C. sec. 152(e), S.S. was not
a qualifying child of P; and, therefore, P was not entitled to
a dependency exemption deduction or a child tax credit for
S.S. for 2007 or 2008.

Rachel George, for herself.
*Rebecca J. Sable*, for respondent.

OPINION

GUSTAFSON, *Judge*: The Internal Revenue Service (IRS) determined deficiencies of $1,510 and $2,414 in petitioner Rachel George's 2007 and 2008 Federal income tax. Ms. George petitioned this Court pursuant to section 6213(a)[1] to redetermine those deficiencies. The cases are now before the Court on the Commissioner's motion for partial summary judgment pursuant to Rule 121; and the motion addresses all the issues in docket No. 15083–10 and the principal issues in docket No. 6116–11. The issue now before us is whether Ms. George is entitled to a dependency exemption deduction and a child tax credit for her daughter S.S.[2] for each of tax years 2007 and 2008. We conclude that she is not and will grant the Commissioner's motion.

## *Background*

Consistent with the principles of Rule 121 (explained below), we will assume true the allegations favorable to Ms. George and will make the inferences favorable to her. Those assumed facts are as follows.

### *Divorce and child support proceedings*

Ms. George and Mr. Johnson John were married in 1988. They have two daughters, I.E. (born in 1988) and S.S. (born in 1992). Ms. George and Mr. John separated in July 1992; and on March 16, 1995, the Circuit Court for Prince George's County, Maryland ("Maryland court"), granted an absolute divorce to Ms. George and Mr. John, which incorporated the terms of their previously executed separation agreement. The divorce judgment awarded custody of I.E. and S.S. to Ms. George, and ordered Mr. John to pay child support. The amount of child support Mr. John was required to pay could be reduced pursuant to a provision in the separation agreement related to health insurance. Under that provision, until Ms. George was able to obtain employer-provided health care coverage, Mr. John was required to provide health insurance

---

[1] Unless otherwise indicated, all citations of sections refer to the Internal Revenue Code of 1986 (26 U.S.C.) in effect for the tax year at issue, and all citations of Rules refer to the Tax Court Rules of Practice and Procedure.

[2] In order to protect their privacy, we refer to Ms. George's children by their initials. *See* Rule 27(a)(3).

for Ms. George, I.E., and S.S. In exchange, Mr. John was then allowed to offset the cost of obtaining that insurance against his child support obligations, with a maximum offset of $200.

During the years at issue S.S. remained in the sole custody of Ms. George. S.S. did not provide most of her own support, and Ms. George does not contend that anyone other than herself and Mr. John provided S.S.'s support during the years at issue. [3] The divorce judgment did not expressly provide how or whether dependent status of the children would be allocated between Mr. John and Ms. George for tax purposes after the divorce.

In December 1995 Ms. George and her children moved to northern Virginia. By February 1996 Mr. John had apparently stopped fulfilling his support obligations; and, as a result, Ms. George initiated a child support action against him in Virginia.

Notwithstanding Ms. George's move to Virginia, one of the couple (we presume Mr. John) moved the Maryland court to modify the divorce judgment. On October 11, 1996, the Maryland court ordered that Mr. John could claim S.S. "as an exemption for Federal and State income tax purposes, each year, commencing with 1996 taxes, provided that all support payments are current". Even though Ms. George had argued that Mr. John was in arrears on child care payments and health insurance premiums for 1996, Ms. George complied with the court order. At the direction of the court, she signed in the courtroom on February 3, 1997, a Form 8332 ("Release of Claim to Exemption for Child of Divorced or Separated Parents"), thereby releasing her right to claim an exemption for S.S. for tax year 1996. Ms. George subsequently moved to dismiss the case from the Maryland court for lack of personal jurisdiction, since Mr. John had moved to Connecticut and Ms. George and the children lived in Virginia. On May 13,

---

[3] If a third party (not the child or her parents) provides most of a child's support, then—notwithstanding a purported release by the custodial parent under section 152(e)—a noncustodial parent (such as Mr. John) could not claim her as a dependent (since section 152(e)(1)(A) applies only if "a child receives over one-half of the child's support * * * *from the child's parents*" (emphasis added)), but the child might remain the custodial parent's "qualifying child" (since that term is defined by section 152(c)(1)(D) to include "an individual * * * who has not provided over one-half of * * * [that] individual's own support", without any requirement as to who, other than the child, must provide that support). There is no suggestion in the record in these cases that S.S. was not a "qualifying child" of Mr. John under the support provisions of the statute.

1997, the Maryland court dismissed the case for lack of jurisdiction over the parties.

Ms. George and Mr. John filed subsequent motions in the Virginia court system to modify Mr. John's child support obligations. Generally, petitions to modify support obligations were initiated in the Juvenile and Domestic Relations District Court ("JDR district court"), and appeals therefrom were heard in a Virginia circuit court. However, on December 8, 2006, just before I.E. turned 18 years old, Mr. John filed not in the JDR district court but in the Circuit Court of Fairfax County, Virginia ("Fairfax County circuit court" or "circuit court") a motion styled "Motion to Modify Child Support, Etc.", in which Mr. John asked the Fairfax County circuit court to modify his child support obligation to require support only of S.S. The motion also asked the circuit court to require that Ms. George execute Form 8332 releasing her claim to exemption for S.S.

By order of January 5, 2007, the Fairfax County circuit court ordered that Ms. George execute Form 8332 releasing any tax exemption claim for S.S. for tax years 1996 to 2010 and amended Mr. John's child support obligation by releasing his obligation to support I.E. Ms. George alleges, and we assume, that Mr. John was in arrears on his child support obligation at the time the January 2007 court order was entered and that he continued to be in arrears thereafter. Nonetheless, on January 5, 2007, pursuant to the court order and under threat of contempt, Ms. George executed another Form 8332 relinquishing her claim to exemption for S.S.—this time for the tax years 1996 to 2010. The form stated: "I agree not to claim an exemption for" S.S.

Ms. George contends that the Fairfax County circuit court erred by failing to consider whether Mr. John was in arrears when it ordered her to execute the Form 8332; moreover, she contends that the circuit court did not have jurisdiction to modify the child support order (and that the JDR district court was instead the proper venue). Accordingly, Ms. George moved the Fairfax County circuit court to reconsider its order, but her motion was denied. On April 10, 2007, Ms. George appealed the order to the Virginia Court of Appeals. On January 30, 2008, the Virginia Court of Appeals dismissed Ms. George's case for failure to file an opening brief. Ms. George's State court battle against the January 2007

order requiring her to sign the Form 8332 has continued in JDR district courts and is apparently still ongoing.

*Tax returns*

Ms. George timely filed a Form 1040, U.S. Individual Income Tax Return, for each of the tax years 2007 and 2008. On both returns Ms. George claimed dependency exemption deductions for S.S. and I.E., claimed head of household status, and claimed child tax credits for S.S. Mr. John also filed Form 1040 returns for 2007 and 2008 to which he attached the Form 8332 that Ms. George had signed on January 5, 2007. On those returns Mr. John claimed dependency exemption deductions for S.S.

The IRS issued to Ms. George notices of deficiency for tax years 2007 (on April 5, 2010) and 2008 (on December 13, 2010). In those notices the IRS determined that Ms. George was not entitled to a dependency exemption deduction or a child tax credit for S.S. for tax year 2007 or 2008. The IRS also determined that for 2008 Ms. George had not established she was entitled to a dependency exemption deduction for I.E. or to head of household filing status.

Ms. George filed timely petitions with this Court seeking redetermination of the deficiencies that the IRS had determined. The Commissioner has moved for partial summary judgment as to Ms. George's claim of a dependency exemption deduction and a child tax credit for S.S.

## *Discussion*

### I. *Summary judgment standards*

Under Rule 121 the Court may grant summary judgment where there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. The party moving for summary judgment (here, the Commissioner) bears the burden of showing that there is no genuine dispute as to any material fact, and the Court will view any factual material and inferences therefrom in the light most favorable to the nonmoving party (here, Ms. George). *See Dahlstrom v. Commissioner*, 85 T.C. 812, 821 (1985). In these cases we assume the facts as shown by Ms. George, the nonmoving party, or as shown by the Commissioner and not disputed by Ms. George.

II. *Dependency exemption*

An individual is allowed a deduction for an exemption for "each individual who is a dependent (as defined in section 152) of the taxpayer for the taxable year." Sec. 151(c). Section 152(a) defines the term "dependent" to include "a qualifying child". Generally, a "qualifying child" must: (i) bear a specified relationship to the taxpayer (e.g., be a child of the taxpayer), (ii) have the same principal place of abode as the taxpayer for more than one-half of the taxable year, (iii) meet certain age requirements, and (iv) not have provided over one-half of such individual's support for the taxable year at issue. Sec. 152(c)(1).

However, in the case of divorced parents, special rules determine which one[4] may claim a dependency exemption deduction for a child. *See* sec. 152(e); *Espinoza v. Commissioner*, T.C. Memo. 2011–108; *cf.* sec. 152(c)(4). Pursuant to section 152(e), when certain criteria are met, a child is treated as a qualifying child of the noncustodial parent (who generally would not have otherwise been entitled to a dependency exemption for the child, because of the "same principal place of abode" requirement of section 152(c)(1)(B)) rather than of the custodial parent (who generally would have otherwise been entitled to the exemption). Sec. 152(e)(1); 26 C.F.R. sec. 1.152–4T(a), Temporary Income Tax Regs., 49 Fed. Reg. 34459 (Aug. 31, 1984).

For these purposes Ms. George is S.S.'s custodial parent and Mr. John is S.S.'s noncustodial parent, because the absolute divorce judgment gave Ms. George sole custody of S.S. *See* sec. 152(e)(4); 26 C.F.R. sec. 1.152–4(b), Income Tax Regs. Pursuant to section 152(e)(1) and (2), criteria sufficient for S.S. to be treated as a qualifying child of Mr. John and not of Ms. George are as follows:

---

[4] Ms. George does not contend that two divorced parents could each be entitled to a dependency exemption deduction for the same child, and it is clear that they could not be. In general, section 152 is designed to assure that a given dependent can be claimed on only one tax return; and section 152(c)(4)—the so-called "tie-breaker"—assures that, when "an individual may be claimed by 2 or more taxpayers", the dependent "shall be treated as the qualifying child of *the* taxpayer", sec. 152(c)(4)(A) (emphasis added), who meets certain criteria; and if those competing claimants are two parents, then under section 152(c)(4)(B), "such child shall be treated as the qualifying child of * * * the parent" who meets certain criteria. Section 152(e) provides an exception to that tie-breaker regime and creates its own, by stating that, where a custodial parent releases the exemption and a noncustodial parent otherwise qualifies, "such child shall be treated as being the qualifying child * * * of the noncustodial parent"—language similar to that of section 152(c)(4)(B).

- The "child receives over one-half of the child's support during the calendar year from the child's parents * * * who are divorced * * * under a decree of divorce", sec. 152(e)(1)(A);
- such child was "in the custody of 1 or both of the child's parents for more than one-half of the calendar year", sec. 152(e)(1)(B);
- "the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year", sec. 152(e)(2)(A); and
- "the noncustodial parent attaches such written declaration to the noncustodial parent's return" for the appropriate taxable year, sec. 152(e)(2)(B).

The written declaration that the Commissioner relies on here is the Form 8332 that the Fairfax County circuit court required Ms. George to sign in January 2007. On that Form 8332, Ms. George straightforwardly declared that she would not claim S.S. as a dependent for years that included 2007 and 2008. The properly executed Form 8332 was attached to Mr. John's 2007 and 2008 returns, indicating that he was entitled to claim S.S. Under the terms of section 152(e), S.S. was not a qualifying child of Ms. George for 2007 or 2008, and Ms. George was not entitled to the dependency exemption deduction. *See King v. Commissioner*, 121 T.C. 245, 253 (2003). There is no genuine dispute about whether Mr. John satisfied the other necessary requirements of section 152(e).[5] Nor does Ms. George argue that she has revoked the Form 8332.[6] Rather, she contends that her Form 8332 should not be given effect for reasons that we now discuss.

### III. *Petitioner's contentions*

Ms. George appears to contend that her Form 8332 should be disregarded for three related reasons—i.e., because she signed it under compulsion, because the order requiring her to sign it was erroneous, and because her former husband

---

[5] Accordingly, we are not faced with the question of, nor do we decide, the effect of an executed Form 8332 if one of the other necessary elements for the noncustodial parent's claim in section 152(e) is not satisfied. *See supra* note 3.

[6] For tax years beginning after July 2, 2008, regulations were promulgated that set forth a procedure to revoke a prior-executed Form 8332. *See* 26 C.F.R. sec. 1.152–4(e)(3), Income Tax Regs. (2008).

did not provide the child support that the court order required and presumed.

### A. *Signing Form 8332 under compulsion*

Ms. George contends that we should disregard the release because she signed it under compulsion and not freely. However, the facts she alleges—i.e., the threat of judicial contempt if she did not comply and sign—cannot be considered "duress" that might make her signing void. Duress occurs when "an unlawful act" induces action, *see Price v. Commissioner*, T.C. Memo. 2003–226; but it was Virginia law that required Ms. George to comply with the Fairfax County circuit court's order, *see Parham v. Commonwealth*, 729 S.E.2d 734, 736–737 (Va. Ct. App. 2012). Every person is always legally bound to comply with the law—but is not thereby under duress.[7] For example, when a divorcing couple files a joint return in compliance with a State court order, an unwilling signer of that return is not considered to be under duress but is bound to that election of joint filing status. *See Bruen v. Commissioner*, T.C. Memo. 2009–249; *Price v. Commissioner*, T.C. Memo. 2003–226. "Even if such an order by * * * [the State court] might have been erroneous, * * * we cannot say that it rose to the level of being improper or wrongful". *Berger v. Commissioner*, T.C. Memo. 1996–76. Thus, Ms. George's obligation under the law to execute the Form 8332 is not "duress", and the compulsion she felt provides no basis for invalidating her release on Form 8332.

### B. *The alleged error of the Fairfax County circuit court order*

Ms. George contends that the Fairfax County circuit court order that required her to sign the Form 8332 for tax years

---

[7] "[I]f an act of one party deprives another of his freedom of will to do or not to do a specific act the party so coerced becomes subject to the will of the other, there is duress, and in such a situation no act of the coerced person is voluntary and contracts made in such circumstances are void because there has been no voluntary meeting of the minds of the parties thereto." *Diescher v. Commissioner*, 18 B.T.A. 353, 358 (1929). But Ms. George signed the Form 8332 not because of any coercion by a "party", such as Mr. John. *Cf. King v. Commissioner*, 121 T.C. 245, 253 (2003) (examining whether there was "an unlawful threat or pattern of abuse or mental intimidation [by the noncustodial parent] that caused * * * [the custodial parent] to sign the form under duress"). Nor was Ms. George under any coercion of her party-opponent in these cases, the IRS (which had no involvement in her signing the release). Rather, any coercion she felt was the result of the law (as enforced by the Virginia courts), which required her to sign the release.

1996 to 2010 was in error, both because that court lacked jurisdiction to issue such an order and because any such order should have taken into account her former husband's past arrears in child support before enabling him to obtain the dependency exemption for S.S. She contends that once a State appellate court corrects this wrong, she will be able to revoke her signature from the Form 8332. Ms. George did appeal the order, but her appeal was dismissed for failure to file an opening brief. In the absence of any correction of the order by a State appellate court, Ms. George collaterally attacks the State court order here, in effect asking us to hold that the order is incorrect and that her release on Form 8332 is therefore invalid.

However, we cannot rely on this uncorrected supposed error to invalidate Ms. George's release on Form 8332, for two reasons: First, we lack the power to grant this remedy. If the State court did err by ordering Ms. George to do something that legally she should not have been required to do, then her remedy is not found in the U.S. Tax Court but rather in an appeal to the State appellate court. The Tax Court's jurisdiction is circumscribed by statute, *Breman v. Commissioner*, 66 T.C. 61, 66 (1976), and this Court does not sit as a court of appeals to correct the errors of State family courts. Second, this remedy would contradict section 152. If Ms. George's position were correct, then a custodial parent could undo the effect of her release on Form 8332 by her unilateral disclaimer of it on the basis of her criticism of the State court order requiring her to sign the form. The noncustodial parent could not rely on the form in reporting his tax liability, and the IRS could not rely on the form in administering the tax laws. This uncertainty would frustrate the purpose of section 152(e):

Congress added this written declaration requirement to section 152(e) in 1984 to provide more certainty to the "often subjective and * * * difficult problems of proof and substantiation" that accompanied dependency exemption disputes under the prior statute. H. Rept. 98–432 (Part 2), at 1498 (1984). Congress sought clarity as to which of two divorced parents would receive the dependency exemption for a taxable year and accomplished it by conditioning the noncustodial parent's claim upon the written verification of the custodial parent's release of his or her claim. To preserve Congress's goal we must insist on strict adherence to the requirements of section 152. * * * [*Chamberlain v. Commissioner*, T.C. Memo. 2007–178.]

Ms. George's position would undermine the intended "certainty" and "clarity" of section 152(e) and would add great difficulty to the administration of the dependency exemption. The statute does not permit the exception for which Ms. George argues. It is not our prerogative to depart from the bright-line rule that Congress created. We therefore decline to examine the propriety of the State court order that required Ms. George to execute the Form 8332. Such an endeavor would undertake the administrative burden that the rule in section 152(e) was designed to alleviate.

### C. *The noncustodial parent's noncompliance*

Ms. George asserts that, in the years after she executed the release, Mr. John has continued to fail in his obligations of financial support by offsetting more than his actual cost of providing health insurance for S.S. and I.E. (which Ms. George contends was nothing because Mr. John had remarried, and, as a result, already had family health insurance coverage). We infer that she thereby contends that, since she has not benefited from the support provisions of the court order, she ought not to suffer the detriment of the release it required. Or, to look at it from Mr. John's perspective, since he has allegedly failed to maintain his *obligations* under the court order, he ought not to be allowed to *benefit* from the court order insofar as it grants him the dependency exemption. We acknowledge that Ms. George's argument (if this is indeed her argument) both is rational and has some visceral appeal. However, this argument could not change the outcome of these cases. Her contention that Mr. John is in arrears on his child support obligations, even if factually supported, does not affect the validity of her Form 8332 under section 152(e) once the form was executed.[8] The only "support" requirement applicable to Mr. John's claim of the dependency exemption is one not disputed here (*see supra* note 3)—i.e., that "a child receives over one-half of the child's support during the calendar year *from the child's parents*". Sec. 152(e)(1)(A) (emphasis added).

---

[8] Ms. George's release on Form 8332 was unconditional, and these cases do not involve a conditional release on a substitute for Form 8332. *Cf. Armstrong v. Commissioner*, 139 T.C. 468 (2012); *Gessic v. Commissioner*, T.C. Memo. 2010–88; *Brissett v. Commissioner*, T.C. Memo. 2003–310.

Section 152(e)(1)(A) does not specify *which* of the child's parents must have provided that support. The statute thus does not require that a noncustodial parent who has the custodial parent's release on Form 8332 must also prove that he, and not the custodial parent, supported the child. Rather, an obvious purpose of section 152(e) is, where a release is executed, to eliminate any contest as to which parent provided how much support. In *Miller v. Commissioner*, 114 T.C. 184 (2000), *aff'd on other grounds sub nom. Lovejoy v. Commissioner*, 293 F.3d 1208 (10th Cir. 2002), a custodial parent argued (as Ms. George seems to argue) that the non-custodial parent "did not comply with his child support obligations, and, therefore, * * * he forfeited his right to the dependency exemptions arguably awarded to him by the Permanent Orders." *Id.* at 196. In rejecting this contention, we stated:

> If we accepted * * * [the custodial parent's] statement of the issue, we would find ourselves in the middle of a child support fight similar to that which Congress intended to remove from the Federal courts when it amended section 152(e) in 1984. Instead, we have framed the issue as it should be framed: Did the noncustodial parent do what was necessary to satisfy section 152(e)(2)? Because we conclude that he has not done so in this case, we need not decide the child support dispute presented to us by * * * [the custodial parent]. [*Id.*]

Likewise, since we determine here that Mr. John did what was necessary to satisfy section 152(e), we need not decide the child support issue that Ms. George presents. *See id.* n.11.

As we recently observed in *Walters v. Commissioner*, T.C. Memo. 2012–230, at *5:

> Congress created several objective tests in section 152. These tests draw bright lines, and without these tests there would need to be rules that are sensitive to a wide variety of family circumstances. Such rules would be difficult to craft and hard for the Commissioner and the Courts to administer and would likely require Government intrusion into delicate family issues.

The Court is required to apply the law as passed by Congress, and the rules of section 152(c), (d), and (e) are explicit. Our obligation to follow the statute as written applies whether the resulting disadvantage is suffered by a custodial parent who executed a Form 8332 but bore an undue and

unintended burden of child support, or is instead suffered by a noncustodial parent who bore the burden of child support but did not receive an executed Form 8332. *See Armstrong v. Commissioner*, 139 T.C. 468 (2012).

## IV. *Child tax credit*

A taxpayer is entitled to a child tax credit for "each qualifying child", as defined in section 152, that has not reached the age of 17. Sec. 24(a), (c)(1). Given our determination that, under section 152, S.S. is not a "qualifying child" of Ms. George for the years at issue, it follows that Ms. George is not entitled to a child tax credit for S.S. for either of those years.

## *Conclusion*

Since there is no genuine dispute as to any material fact, and under section 152(e) S.S. is not a qualifying child of Ms. George for her 2007 or 2008 taxable year, the Commissioner's motion for partial summary judgment will be granted. To that end,

> *Decision will be entered for respondent in docket No. 15083–10, and an appropriate order will be entered in docket No. 6116–11.*